# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AUSTIN KLEINHANS, et al.,                    Case No. 1:21-cv-70
      Plaintiffs,                              Barrett, J.
                                    Litkovitz, M.J.

      vs.

GREATER CINCINNATI BEHAVIORAL          **REPORT AND**
HEALTH SERVICES,                              **RECCOMENDATION**
      Defendant.

      This matter is before the Court on plaintiffs' motion to conditionally certify a Fair Labor Standards Act collective action, for expedited opt-in discovery, and for court supervised notice to potential opt-in plaintiffs (Doc. 11), defendant Greater Cincinnati Behavioral Health Services' (GCBHS's) response in opposition (Doc. 19), and plaintiffs' reply memorandum (Doc. 20).

## I. Background

      Plaintiffs Austin Kleinhans and Tessa Bradley[1] initiated this action against GCBHS, a behavioral health services provider and their former employer, on January 31, 2021. (Doc. 1). Plaintiffs filed an amended complaint on April 23, 2021. (Doc. 9). Plaintiffs allege that GCBHS violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*., which requires employers to compensate employees for all hours they work and to pay overtime to all employees who are covered by the FLSA's provisions. *See* 29 U.S.C. § 207(a) (an employer must pay a non-exempt employee compensation "at a rate not less than one and one-half times the regular rate at which he is employed" for hours the employee works in excess of 40 hours in

---

[1] Named plaintiffs Kleinhans and Bradley are referred to in this Report and Reccomendation as "plaintiffs."

a workweek).[2]  Plaintiffs allege that GCBHS violated the FLSA by misclassifying them as "exempt" employees under the FLSA's "professional exemption" provision and by "willful[ly]" failing to pay them overtime wages.  (Doc. 9 at PAGEID 38-41); *see* 29 U.S.C. § 213(a)(1) (individuals "employed in a bona fide executive, administrative, or professional capacity" are exempt from the overtime provisions of 29 U.S.C. § 207(a)); *see also* 29 C.F.R. § 541.300(a)(2)(i) (FLSA implementing regulation which defines the term "employee employed in a bona fide professional capacity" as any employee "[w]hose primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. . . .").

Plaintiffs Kleinhans and Bradley allege they were employees of GCBHS who provided case management services to individuals with chronic illnesses or disabilities.[3]  (Doc. 9 at PAGEID 38).  Kleinhans worked for GCBHS from approximately August 28, 2020 to January 4, 2021, and Bradley worked for GCBHS from approximately January 21, 2020 to April 28, 2020. (*Id.*).  Plaintiffs describe their typical duties as driving to and from GCBHS's clients' homes, the hospital, group homes, court hearings, GCBHS's offices, and medical and personal appointments, which they assert was their primary job duty; completing various documentation, which they often did at home; communicating with pharmacies and medical offices regarding client needs; communicating with GCBHS's clients to "discuss, schedule, or otherwise coordinate appointments, home visits, and medication pickups"; "waiting outside for Defendant's clients to finish appointments"; emailing and communicating with coworkers to

---

[2] Plaintiffs also allege that defendant violated the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01.  The OMFWSA incorporates the overtime wage rate provisions of the FLSA, 29 U.S.C. §§ 207, 213.  Because plaintiffs move to conditionally certify a class under the FLSA, 29 U.S.C. § 216(b), only, this decision addresses only the FLSA claims.

[3] Plaintiffs do not specifically allege in the amended complaint that their job title was "Case Manager."  (Doc. 9).

"coordinate transportation and medication drop-offs and other issues"; contacting "shelters, social security offices, and relatives of Defendant's clients"; and "communicating with Defendant's clients to assist in completion of personal tasks or everyday living." (*Id*. at PAGEID 40-41).

Plaintiffs allege that GCBHS required plaintiffs and similarly situated Case Managers to "work over 40 hours per week," and plaintiffs claim that they and putative class members "regularly worked an average of approximately 50 to 60 hours per week." (*Id.* at PAGEID 39, 40-41). Plaintiffs allege that GCBHS failed to pay plaintiffs and similarly situated Case Managers overtime compensation at the rate of one and one-half times their regular rate of pay for each hour worked in excess of 40 hours per workweek, and GCBHS failed to preserve payroll and other employment records. (*Id.* at PAGEID 39-41, 42). Plaintiffs allege that GCBHS misclassified them and similarly situated putative class members as "exempt" employees under FLSA's "professional exemption," when in actuality plaintiffs and other Case Managers did not fall under the exemption because the work they performed required only a high school diploma and did not require "advanced or specialized knowledge." (*Id.* at PAGEID 39-41, 42).

## II.  Collective action under the FLSA, 29 U.S.C. § 216(b)

Plaintiffs move for conditional certification of a collective class under 29 U.S.C. § 216(b). (Doc. 11). Under 29 U.S.C. § 216(b), employers who violate the FLSA's minimum wage or unpaid overtime compensation provisions may be subject to a collective action by similarly situated employees who affirmatively consent in writing to participate in the action. Plaintiffs seek to represent a class of similarly situated former and current employees of GCBHS

who have worked as Case Managers and were not paid overtime wages.  (Doc. 9 at PAGEID 43).

Plaintiffs define the putative opt-in class as:

> All current and former individuals in positions, job titles, job codes, job classifications, or job descriptions of 'Case Manager' and all other similar nomenclature performing substantially identical functions employed by Greater Cincinnati Behavioral Health Services between January 31, 2018 and the present.

(Doc. 11-1 at PAGEID 70; Doc. 9 at ¶ 27).

The FLSA authorizes a court to certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  The Sixth Circuit "has implicitly upheld a two-step procedure" for determining whether an FLSA case should proceed as a collective action.  *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 874 (S.D. Ohio 2017) (citing *Hughes v. Gulf Interstate Field Services, Inc.*, No. 2:14-cv-0432, 2015 WL 4112312, at *2 (S.D. Ohio July 7, 2015) (citing in turn *In re HCR ManorCare, Inc.,* No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011))).  The first step is conditional certification, or the "initial notice stage."  *Id.* (quoting *Swigart v. Fifth Third Bank,* 276 F.R.D. 210, 213 (S.D. Ohio 2011)).  *See also Crace v. Viking Group, Inc.*, No. 3:20-cv-176, 2021 WL 764072, at *2 (S.D. Ohio Feb. 26, 2021) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).  At this step, which occurs prior to discovery, the court must determine whether the named plaintiffs have shown that the class of employees they seek to represent are "similarly situated."  *Crace*, 2021 WL 764072, at *2 (quoting *Comer*, 454 F.3d at 546).

The standard at the first stage of the certification process for determining whether employees are similarly situated is "fairly lenient" and "typically results in conditional certification of a representative class."  *Hamm*, 275 F. Supp. 3d at 874 (quoting *Comer*, 454 F.3d at 547).  The plaintiff need only make a "modest showing" that he or she is similarly situated to

the other potential opt-in plaintiffs. *Id.* (quoting *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011)). Judges in this and other districts in the Sixth Circuit have recognized that "holding a plaintiff to a summary judgment standard prior to discovery would defeat the purpose of the 'modest showing' required at [the] conditional certification stage." *Crace*, 2021 WL 764072, at *2 (citing *Bailey v. Black Tie Mgmt. Co.*, No. 2:19-cv-1677, 2019 WL 5884353, at *4 (S.D. Ohio Nov. 12, 2019) (quoting *Combs v. Twins Grp., Inc.*, No. 3:16-cv-295, 2016 WL 7230854, at *2 (S.D. Ohio Dec. 14, 2016) ("The rationale for applying a less rigorous evidentiary standard" at the conditional certification stage is "sound"))).[4] Thus, a plaintiff must "produce some evidence that the putative class is similarly situated." *Id.* (citing *Comer*, 454 F.3d at 547). However, courts at the conditional certification stage will "not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues" at this juncture. *Id.* (quoting *Swigart*, 276 F.R.D. at 214).

The FLSA does not define "similarly situated," but the governing case law establishes that a plaintiff can show that members of a class are "similarly situated" at the conditional certification stage by showing that he or she and the proposed class members "'suffer from a single, FLSA-violating policy' or [that] their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 894-95 (S.D. Ohio 2018) (quoting *Ford v. Carnegie Mgt. Services, Inc.*, No. 2:16-cv-18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016) (quoting in turn *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d

---

[4] The district court in *Crace* acknowledged that the Sixth Circuit has not yet addressed the evidentiary standard that applies at the conditional certification stage. *Crace*, 2021 WL 764072, at *2 (citing *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 WL 1929383, at *9 (S.D. Ohio Apr. 21, 2020); *Bailey*, 2019 WL 5884353, at *4; *Combs*, 2016 WL 7230854, at *2).

567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016))).  Plaintiffs are not required to show "a 'unified policy' of violations" to make a showing that they are similarly situated to potential opt-in class members.  *Crace,* 2021 WL 764072, at *2 (quoting *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016)).  Courts will generally consider "'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted.'"  *Cockrell v. Spring Home Health Care LLC*, No. 21-cv-346, 2021 WL 1850702, at *2 (S.D. Ohio May 10, 2021) (citing *Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-1110, 2019 WL 101905, at *2 (S.D. Ohio Jan. 4, 2019) (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio Sept. 4, 2014))).

In a case involving misclassification of exempt employees, conditional certification is appropriate "where the plaintiffs made a modest factual showing that the nature of the work performed by all class members is at least similar to their own."  *Marlow v. Mid-South Maint. of Tennessee, LLC*, No. 3:20-cv-00711, 2021 WL 981550, at *4 (M.D. Tenn. Mar. 16, 2021) (citing *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2nd Cir. 2010)) ("In a FLSA exemption case, plaintiffs [meet their burden at the first stage] by making some showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.").  Plaintiffs need not demonstrate that their position is identical to the position held by putative class members to show they are "similarly situated"; they need only show that their "position is similar . . . to the positions held by the putative class

members." *Comer,* 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.,* 210 F.R.D., 591, 595 (S.D. Ohio 2002)). *See also Crace,* 2021 WL 764072, at *2.

The ultimate determination of whether to grant conditional certification is in the discretion of the district court. *Hamm*, 275 F. Supp. 3d at 874 (citing *Comer*, 454 F.3d at 546). If the Court exercises its discretion to authorize conditional certification of a class, "notice is distributed to the class, putative class members return the opt-in forms sent to them, and the parties conduct discovery." *Hall*, 299 F. Supp. 3d at 895 (citing *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015)). Step two of the two-tiered approach is final certification, which involves a closer examination into whether particular members of a class are in fact "similarly situated." *Comer*, 454 F.3d at 547. If a class is conditionally certified, a defendant may move to decertify the class at the final certification stage. *Hamm*, 275 F. Supp. 3d at 874 (citing *Swigart*, 276 F.R.D. at 213).

## III. Plaintiffs' motion for conditional certification (Doc. 11)

Plaintiffs argue the putative class should be conditionally certified for notice purposes because plaintiffs have shown they are similarly situated to the potential opt-in plaintiffs. (Doc. 11-1 at PAGEID 69). Plaintiffs argue that the allegations of their amended complaint, their declarations, and the declarations of putative opt-in class members submitted in support of their motion constitute a "modest factual showing" that they are similarly situated to the putative class members. (*Id*. at PAGEID 63; Doc. 11-3, Kleinhans Declaration; Doc. 11-4, Bradley Declaration; Doc. 11-5, Opt-in Plaintiffs' Declarations). Plaintiffs allege in the amended complaint that they and other potential class members are similarly situated because they are or were employed by GCBHS as Case Managers or in similar positions where they performed "substantially identical functions and/or duties"; GCBHS misclassified them as "exempt"

7

employees; GCBHS pays or paid them on a salary basis; they performed the same job duties; their primary duty was "transporting persons with chronic illnesses or disabilities" to and from various locations; their primary work duties did not involve "advanced or specialized knowledge"; their work was not "predominantly intellectual in character" and did not require "the consistent exercise of discretion and judgment"; their work did not require a degree in social work; and they worked more than 40 hours per week but "were not paid overtime compensation at the rate of one and a half times their hourly rate" for the excess hours they worked each workweek. (Doc. 9 at PAGEID 70-71). Plaintiffs argue that because they have met their "minimal burden" of showing they are similarly situated to the potential opt-in plaintiffs, the Court should conditionally certify an FLSA class; expedite opt-in discovery of the "identity, contact information, and pertinent employment dates of all current and former individuals in positions, job titles, job codes, job classifications, or job descriptions of 'Case Manager' and all other similar nomenclature performing substantially identical functions employed by [GCBHS] in the last three (3) years" to "facilitate prompt notice" to members of the putative class; and supervise notice to the class. (Doc. 11-1 at PAGEID 79).

GCBHS argues in response that the Court should not conditionally certify a class. (Doc. 19). Initially, GCBHS urges the Court to decline to follow a two-tiered conditional certification approach and either (1) deny plaintiffs' motion, or (2) order limited discovery for the purpose of determining whether the proposed class of employees is "similarly situated" under the FLSA. (*Id*. at PAGEID 133-136). Assuming the Court proceeds to consider whether conditional certification is warranted, GCBHS argues the Court should deny conditional certification because plaintiffs have not met their burden of proving that they and the putative class members are similarly situated. GCBHS asserts that plaintiffs largely claim that they were similarly

8

situated to the putative class members because they were misclassified as "exempt," which is an insufficient ground for conditionally certifying a class. (*Id.* at PAGEID 129). GCBHS further contends that insofar as plaintiffs seek to provide support for their claim that they and other Case Managers are similarly situated, plaintiffs have made only unsupported "conclusory statements" about the nature of Case Managers' work, pay practices, policies, procedures, and hours worked per week, which are not sufficient to carry their burden of proof. (*Id.* at PAGEID 129-31). GCBHS has submitted competing declarations from two "Care Managers" to show that plaintiffs were not similarly situated to other potential opt-in plaintiffs.[5] (Doc. 19-2, Greg Jones Declaration; Doc. 19-3, David Smith Declaration). Finally, GCBHS argues that plaintiffs are not similarly situated to potential opt-in plaintiffs who signed a collective action waiver as part of a severance agreement with GCBHS. (Doc. 19 at PAGEID 131-32).

In reply, plaintiffs argue that GCBHS has erroneously focused on the merits of their claims and asked the Court to consider "alleged individual inquiries" and to determine facts and credibility issues. (Doc. 20 at PAGEID 149, 155-59). Plaintiffs argue they are entitled to conditional certification because they have shown that they and the putative class members are "unified by common theories of Defendant's statutory violations" and have identified a plan or policy that violates the FLSA. (*Id.* at PAGEID 152). Plaintiffs further contend that the Court should not give weight to the declarations of current employees of GCBHS at the conditional certification stage.

---

[5] Defendant refers to plaintiffs and other individuals who "provide case management support for GCBHS's clients with mental illnesses" as "Care Managers." (*See* Doc. 19 at PAGEID 123; Doc. 10, Answer to Amended Complaint, ¶¶ 4, 5).

### A. The two-tiered conditional certification procedure applies.

Initially, the Court rejects GCBHS's proposal that the Court decline to follow the two-tiered conditional certification procedure. In support of its argument that the Court should reject the two-tiered approach, GCBHS relies on a recent decision from the Fifth Circuit which it argues "persuasively lays out a more appropriate framework for deciding a motion for collective action certification" than the "two stage certification method." (Doc. 19 at PAGEID 134, citing *Swales v. KLLM Transp. Servs., LLC*, No. 19-60847, 2021 WL 98229, at *2 (5th Cir. Jan. 12, 2021)). But this Court is bound by the law of the Sixth Circuit, which follows the two-tiered conditional certification approach. *See, supra*. Further, judges in the Southern District of Ohio have not eschewed the two-tiered approach and have continued to apply it subsequent to the Fifth Circuit's decision in *Swales*. *See, e.g., Cockrell*, 2021 WL 1850702, at *2; *Crace*, 2021 WL 764072, at *2. Thus, the Court will follow the two-tiered approach here.

### B. Plaintiffs have met their burden to show members of the proposed class are similarly situated.

Plaintiffs have submitted sufficient evidence to make a "modest" showing that they are similarly situated to the potential opt-in plaintiffs. To meet their burden, plaintiffs have submitted their declarations (Doc. 11-3, Kleinhans Declaration; Doc. 11-4, Bradley Declaration) and declarations from six opt-in class members (Doc. 11-5). In their declarations, plaintiffs reiterate many of the assertions in their amended complaint, including that GCBHS classified them as "exempt" employees and paid them a salary. Plaintiffs further assert that they did not engage in management; direct the work of any employees; have the authority to hire, fire, or promote employees; perform work directly related to management or general business operations of "Connections"[6]; exercise discretion and independent judgment with respect to matters of

---

[6] "Connections" appears for the first time, without explanation, in plaintiffs' and the opt-in plaintiffs' declarations.

significance; or perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. (*Id*.). Further, plaintiffs state that as a result of GCBHS's practices and policies, and in violation of the FLSA's overtime compensation provisions, they were not paid overtime compensation at the rate of one and one-half times their regular pay rate for hours in excess of 40 that they worked each week. (*Id*.).

Plaintiffs also state that they observed GCBHS treat other Case Managers in the same manner by not compensating Case Managers for all hours they worked, including the hours in excess of 40 hours that Case Managers worked each workweek. (*Id*.). Plaintiffs assert that they observed GCBHS did not pay other Case Managers overtime at the rate of one and one-half times their regular pay for these hours. (*Id*.). Plaintiffs assert that they believe they are similarly situated to these other employees because during their employment with GCBHS, they observed that they and the other Case Managers held similar positions, were classified by GCBHS as "exempt" employees, were paid on a salary basis, and had the same or substantially similar job duties and/or responsibilities. (*Id*.). Plaintiffs describe the primary duty they and other Case Managers performed as transporting individuals with chronic illnesses or disabilities to and from their homes and the hospital, group homes, GCBHS's offices, medical appointments, and personal appointments. (*Id*.). Plaintiffs assert that the work they and other Case Managers performed for GCBHS was not predominantly intellectual in character and did not require "the consistent exercise of discretion and judgment or a degree in social work." (*Id*.). Plaintiffs assert that they and the proposed class members were subject to the same pay practices, policies, and procedures; they worked more than 40 hours per workweek; and they were not paid at the

11

required overtime rate of one and one-half times their regular rate of pay for the excess hours. (*Id*.).

Plaintiffs have also submitted the declarations of six opt-in plaintiffs who were employed by GCBHS as Case Managers at various times between February 2015 and September 2020. (Doc. 11-5). These declarants assert that GCBHS classified them as "exempt" employees and paid them a salary for 40 hours per week; however, GCBHS regularly required them to work over 40 hours per week and did not pay them overtime compensation for any of the excess hours. (*Id*.). Like plaintiffs, these Case Managers assert they did not engage in management; direct the work of any employees; have the authority to hire, fire, or promote employees; perform work directly related to management or general business operations of "Connections"; exercise discretion and independent judgment with respect to matters of significance; or perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized or intellectual instruction. (*Id*.). The Case Managers also state that they do not have a bachelor's or master's degree in social work. (*Id*.). Finally, the Case Managers assert that as a result of GCBHS's practices and policies, they were not compensated for all of the time they worked, including the hours in excess of 40 hours each workweek. (*Id*.). The declarants state that they observed GCBHS treat other Case Managers the same way, and they believe they are similarly situated to "other employees" because they were all classified as "exempt," they were paid a salary, they worked over 40 hours per week, they were not paid overtime compensation, and they did not have a bachelor's or master's degree in social work. (*Id.*).

GCBHS contends that plaintiffs have not made even a "modest" showing that they are similarly situated to the putative class members. (Doc. 19 at PAGE 129-31). GCBHS

12

challenges plaintiffs' representations that they and the potential class members are "similarly situated."  GCBHS argues that the class plaintiffs seek to certify consists of approximately 461 current and former GCBHS employees who are or were assigned to one of 29 "care management teams," each of which is under its own supervisor; provides different levels of care that are largely categorized as either "moderate" or "intensive"; and serves different types of clients with different types of needs.  (*Id.* at PAGEID 126-27, citing Doc. 19-1, Nikki Bisig Declaration). GCBHS alleges that a team's classification determines the nature of the "Care Manager's" work and whether a Care Manager is able to "exercise independent judgment and their freedom from supervision"; the number of hours a Care Manager works each week; the autonomy the Care Manager has to create his or her own schedule; and the Care Manager's duties.  (*Id.*).  GCBHS contends that either a single Care Manager or an entire team will serve a client depending on the client's needs.  (*Id.*).  GCBHS asserts that each plaintiff worked on only one of its 29 care management teams during their brief tenure with GCBHS, and plaintiffs offer only "conclusory" statements of what they have "observed" as to other "unidentified" class members while providing no details about the specific payment policies they reference or any evidence to show these policies were uniformly enforced across GCBHS's 29 care management teams.  (*Id.* at PAGEID 124, citing Bisig Decl., ¶¶ 8, 13-14; *Id.* at PAGEID 130).  GCBHS argues that because plaintiffs have not provided any details about the employees they observed, such as which teams the employees worked on, which clients they worked with, and when they made their observations, their allegations do not support conditional certification.  (*Id.* at PAGEID 130-31 (citing *Marlow,* 2021 WL 981550, at *4; *O'Neal v. Emery Fed. Credit Union,* No. 1:13-cv-22, 2013 WL 4013167, at *5 (S.D. Ohio Aug. 6, 2013)).  In addition, GCBHS argues that the declarations it has submitted from two "Care Managers" currently employed by GCBHS, David

Smith and Greg Jones, show that "Care Managers simply do not do the same things" and are not all subject to a common policy that violates the FLSA.  (*Id*. at PAGEID 127, citing Doc. 19-2, Jones Decl.; Doc. 19-3, Smith Decl.).  GCBHS argues that Jones' and Smith's declarations show plaintiffs are not similarly situated to the other members of the putative class because these "Care Managers" allegedly "do different things, exercise different amounts of discretion, [are] subject to different amounts of supervision [and] claim to work significantly different amounts of hours per week."  (Doc. 19 at PAGEID 128, citing Doc. 19-2, Jones Decl.; Doc. 19-3, Smith Decl.).  GCBHS argues that in light of these distinctions, conditional certification of a class is not appropriate.

Initially, the Court declines to consider at this juncture the competing declarations of current employees submitted by GCBHS to rebut plaintiffs' allegations and show that not all Case Managers are similarly situated.  The Court lacks the authority to weigh the parties' competing factual assertions and evidence at the conditional certification stage.  *Hamm*, 275 F. Supp. 3d at 876.  "[T]he Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations at [the conditional certification] stage of the proceedings."  *Cockrell*, 2021 WL 1850702, at *3-4 (citing *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *6 (S.D. Ohio 2019)).  Moreover, judges in this district have specifically declined to consider declarations from a defendant's current employees at the conditional certification stage, finding this to be a "premature examination of the merits of the claims."  *Slaughter*, 2020 WL 1929383, at *8.  *See also Myers*, 201 F. Supp. 3d at 891-92 (balancing of competing affidavits was improper because it would require credibility and factual findings).  Thus, the Court cannot resolve the factual disputes that GCBHS attempts to create by submitting competing declarations at this stage of the case.

Instead, the Court must limit its consideration to plaintiffs' evidence to determine whether they have satisfied their "modest burden" to show that they are similarly situated to the putative class members. *See Crescenzo v. O-Tex Pumping, LLC*, No. 2:15-cv-2851, 2016 WL 3277226, at *4 (S.D. Ohio June 15, 2016) (citing, *e.g.*, *Douglas v. GE Energy Reuter Stokes*, No. 1:07-cv-077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007)) ("At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.") (internal quotation marks and citations omitted). Plaintiffs have submitted their sworn declarations and the sworn declarations of six opt-in plaintiffs to show that plaintiffs and members of the putative class are similarly situated. GCBHS challenges the admissibility of the declarations plaintiffs have submitted and contends they are insufficient to support plaintiffs' conditional certification motion because they allegedly are based on hearsay and not on personal knowledge. (Doc. 19 at PAGEID 125 (citing *Landsberg v. Acton Enterprises, Inc.*, No. 2:05-cv-500, 2006 WL 3742221, at *1 (S.D. Ohio Dec. 15, 2006) (inadmissible hearsay cannot be used to determine whether employees are similarly situated for purposes of 29 U.S.C. § 216(b)); *Mathews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2009 WL 2591497, at *4 (E.D. Mich. Aug. 24, 2009), *modified,* 2009 WL 10680524 (E.D. Mich. Oct. 27, 2008) (disregarding portions of declarations that failed to establish the basis for the plaintiffs' knowledge of statements)). *See also Clark v. Dollar Gen. Corp.,* No. 3:00-0729, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001) (court declined to consider inadmissible hearsay statements of unidentified managers, which were prejudicial to defendant, in ruling on motion for expedited court-supervised notice). GCBHS argues that plaintiffs have made no more than conclusory allegations and have submitted no evidence to show that the potential opt-in plaintiffs performed similar duties or

were subject to similar wage violations as plaintiffs as to make even a "modest" showing that they are similarly situated to employees who performed similar job duties and were subject to a global policy that violates the FLSA.  (Doc. 19 at PAGEID 124, 129).

GCBHS's challenges to the admissibility of the declarations that plaintiffs have submitted in support of their conditional certification motion are not well-taken.  In their declarations, plaintiffs Kleinhans and Bradley attest they "observed" that they and the potential opt-in plaintiffs had the same or substantially similar job duties; their primary job duty was transporting individuals from place to place; their work was not predominantly intellectual in character and did not require the consistent exercise of discretion or judgment; and a degree in social work was not required for their position.  (Doc. 11-3, Kleinhans Decl.; Doc. 11-4, Bradley Decl.).  Plaintiffs also state in their declarations that they were each employed by GCBHS as an exempt employee; they regularly worked over 40 hours per week and were not paid overtime compensation; and they "observed" GCBHS following the same overtime pay practice with other employees.  (*Id.,* ¶¶ 2, 8, 13).  Plaintiffs' observations of how GCBHS applied its overtime pay practices to other Case Managers is admissible to establish personal knowledge of GCBHS's practices and to show that plaintiffs are similarly situated to the other putative class members. *Cf. Powers v. Blessed HomeCare, LLC*, No. 3:18-cv-01029, 2019 WL 4450514, at *3-5 n. 4 (M.D. Tenn. Sept. 17, 2019) ("'personal observations' of other employees . . . can be sufficient to demonstrate personal knowledge of the situations of other employees" if supported by facts) (citing *Burgess v. Wesley Fin. Grp, LLC*, No. 3:16-cv-1655, 2017 WL 1021294, at * 4 (M.D. Tenn. Mar. 16, 2017)).  *Cf. Cockrell,* 2021 WL 1850702, at *3-4 (the plaintiff's declaration stating that she was "aware" of the application of the defendant's pay policies and practices and how they applied to other employees showed knowledge of the policies).

16

GCBHS also challenges plaintiffs' assertions in their sworn declarations as conclusory and unsupported. (Doc. 19 at PAGEID 129-31). GCBHS asserts that the factual showing required to support conditional certification, though "modest," cannot be met "simply by unsupported assertions." *See Marlow*, 2021 WL 981550, at *3 (citing *Medley v. Southern Health Partners, Inc.*, No. 1:17-cv-00003, 2017 WL 3485641, at * 5 (M.D. Tenn. Aug. 15, 2017)). GCBHS contends this is true even if the conclusory allegations are set forth in a sworn declaration. *Id.* (citing *McKinstry v. Dev. Essential Servs., Inc.*, No. 2:16-cv-12565, 2017 WL 815666, at * 2 (E.D. Mich. Mar. 2, 2017)). GCBHS asserts that the named plaintiff must submit evidence that establishes "at least a colorable basis for her claim that a class of similarly situated plaintiffs exists" and "some factual support for the existence of a class-wide policy or practice that violates the FLSA." *Id*. (citing *Medley*, 2017 WL 3485641, at *5; *Swinney v. Amcomm Telecom., Inc.,* No. 12-12925, 2013 WL 28063, at *5 (E.D. Mich. Jan. 2, 2013)).

Here, plaintiffs' evidence does not fall short of the standards discussed in the cases GCBHS cites. Plaintiffs have provided factual support for the application of an FLSA-violating policy to a class of employees who performed case management services for GCBHS. Plaintiffs have identified a class of potential opt-in plaintiffs which, according to GCBHS, numbers approximately 461 current and former employees who held the same job title. (*See* Doc. 19 at PAGEID 126). Plaintiffs have adequately shown through their declarations and the declarations of the six opt-in plaintiffs that the named plaintiffs and the class of potential opt-in plaintiffs are similarly situated for purposes of the FLSA. (Docs. 11-3, 11-4, 11-5). These declarations show that plaintiffs and the potential class members performed the same types of job duties, which did not require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." *See* 29 C.F.R. §

541.300(a)(2)(i). Yet, GCBHS had a policy of allegedly misclassifying Case Managers as "exempt" employees under the FLSA, 29 U.S.C. § 213(a)(1). The declarations are also sufficient to show that during the relevant time period, GCBHS had a policy of violating the FLSA's overtime pay provisions as to plaintiffs and the potential class members. According to plaintiffs and the other declarants, Case Managers were regularly required to work more than 40 hours per week, but it was GCBHS's policy to deny Case Managers overtime compensation at a rate of one and one-half times their regular pay rate for hours in excess of 40 hours per workweek. *See* 29 U.S.C. § 207(a). Thus, plaintiffs' declarations and those of the potential opt-in plaintiffs satisfy plaintiffs' "modest factual burden" to show that plaintiffs and other potential class members are similarly situated for purposes of the FLSA. (*See* Docs. 11-3, 11-4, 11-5).

The evidence plaintiffs have submitted through their sworn declarations and those of the opt-in plaintiffs distinguishes this case from other district court cases in the Sixth Circuit that GCBHS relies on to show plaintiffs have not satisfied their "modest" burden. GCBHS cites *Marlow*, 2021 WL 981550, for the proposition that plaintiffs have provided nothing more than conclusory allegations completely devoid of factual support to carry their burden on conditional certification. (Doc. 19 at PAGEID 130). But in *Marlow*, the court found that the plaintiff did not allege "facts to show anything beyond how the alleged pay policy was applied to and affected her"; she alleged no facts to show the policy was applied company-wide or affected other employees. *Marlow*, 2021 WL 981550, at *6. Unlike the plaintiff in *Marlow*, plaintiffs here have provided declarations asserting such facts as explained *supra*.

This case is also distinguishable from *O'Neal*, 2013 WL 4013167, at *5. There, the court acknowledged that "any conflicts and reasonable inferences" would need to be resolved in the plaintiff's favor at the conditional certification stage *if* the plaintiff had "provided evidence in

support of her allegations that others are similarly situated." *Id.* at \*9. However, unlike plaintiffs here, the plaintiff in *O'Neal* had not provided support for her allegations that the employer "had pay policies that resulted in the denial of minimum wage and overtime pay to all its loan officers," such as affidavits from loan officers that "attested to personally observing any other loan officer work more than his or her contracted number of hours or more than forty hours per week." *Id.*

This case is also distinguishable from *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at \*10 (E.D. Mich. Mar. 23, 2012), insofar as the court in that case found that the declaration of one of the two named plaintiffs, who claimed she had been misclassified as an exempt employee, did not "establish a right to proceed collectively." The court found that the plaintiff's "bare-bones affidavit stat[ing] only" that she knew "of other individuals who regularly worked overtime hours" for her employer, without even stating whether these unspecified individuals were paid for their hours of overtime, did not make the "requisite modest factual showing" that the named plaintiff and other allegedly exempt employees were similarly situated. *Id.* In contrast, plaintiffs and the other declarants in this case have provided pertinent information of this nature in their declarations.

Finally, this case is also distinguishable from *Landsberg*, 2006 WL 3742221, at \*1 and \*3, where the court found that the plaintiff had "failed to adduce even a colorable basis for a determination that the putative plaintiffs are similarly situated" and had relied only on speculation. In *Landsberg*, the court found that the plaintiff had not made a sufficient showing because (1) the plaintiff submitted only his affidavit and that of another employee, both of which relied on inadmissible hearsay statements which could not be used to determine whether employees are similarly situated for purposes of § 216(b); and (2) the plaintiff had failed to

obtain affidavits from additional employees to support his claim that other managers were similarly situated, even though the plaintiff had ample opportunity to do so. *Id*. Plaintiffs here do not rely on inadmissible hearsay and have submitted the declarations of other employees to support their claims.

Thus, although GCBHS disputes plaintiffs' factual claims, "[q]uestions of fact (what duties employees performed and whether they were paid for them) . . . [are] not appropriate for the notice stage of conditional certification." *Luster v. AWP, Inc.*, No. 1:16-cv-2613, 2017 WL 3140697, at *2 (N.D. Ohio July 25, 2017). At this stage of the case, it is sufficient that plaintiffs have submitted declarations showing that GCBHS's alleged FLSA-violating overtime pay policies applied to them and all Case Managers, each of whom allegedly performed similar job duties and was purportedly misclassified as exempt. Thus, conditional certification of the proposed class is warranted.

### C. Restricting the class is not appropriate at this stage

GCBHS argues that if the Court decides to conditionally certify a class, putative class members who signed a collective action waiver in 2020, when GCBHS eliminated multiple staff members' jobs as part of a reduction in force, must be excluded from the class. (Doc. 19 at PAGEID 131-32, citing Bisig Decl., ¶ 15). GCBHS cites district court cases from outside the Sixth Circuit for the proposition that "[c]ourts routinely exclude employees who have signed class or collective waivers from FLSA collective actions." (Doc. 19 at PAGEID 10). GCBHS contends that plaintiffs here did not sign a waiver and therefore are not similarly situated to, and cannot represent, individuals who did sign waivers. (*Id*. at PAGEID 132, citing Bisig Decl., ¶ 16). In reply, plaintiffs assert that the law in this Circuit is not consistent with the decisions from other federal circuits that GCBHS cites. (Doc. 20 at PAGEID 162). Plaintiffs also contend that

GCBHS's argument requires a merits-based determination that is not appropriately made at the initial tier of the conditional certification procedure.  (Doc. 20 at PAGEID 162).

The Court finds it is not appropriate to determine the waiver issue at the conditional certification stage.  Whether certain employees should be excluded from the proposed class because they signed collective action waivers requires factual determinations.  First, there is a factual issue as to whether the confidential severance agreements and "Class Action Waivers" signed by GCBHS employees in 2020 included an arbitration provision.  If the severance agreements and "Class Action Waivers" did not include an arbitration provision, then the waivers are invalid under binding precedent and cannot be enforced against any putative class member.  "Both Sixth Circuit and Southern District of Ohio precedent clearly holds that" FLSA collective action waivers which do not include an arbitration provision are not valid.  *Abner v. Convergys Corp.*, No. 1:18-cv-442, 2019 WL 1573201, at *2 (S.D. Ohio Apr. 11, 2019) (citing *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014); *Hall,* 299 F. Supp. 3d at 892-93).  In *Killion,* 761 F.3d at 592, the Sixth Circuit held that employees did not waive their right to participate in a collective action under the FLSA where the waiver agreement did not include an arbitration provision.  The court of appeals relied on its rationale in *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606-07 (6th Cir. 2013), which "is based on the general principle of striking down restrictions on the employees' FLSA rights that would have the effect of granting their employer an unfair advantage over its competitors."  In *Hall*, 299 F. Supp. 3d at 892-93, the district court held that contracts which "purportedly waive[d] [the] Plaintiffs' rights to 'certification of a class action'" were not enforceable under *Killion* because the waivers did not contain an arbitration agreement.  In accordance with the binding precedent, this Court cannot determine whether the 2020 severance agreements and "Class Action Waivers" at issue

here are valid until the parties submit evidence showing whether the agreements and waivers included an arbitration provision. This factual determination is not appropriately made at the conditional certification stage.

In addition, even if the 2020 severance agreements and "Class Action Waivers" included an arbitration provision, consideration of the waivers is not appropriate at the conditional certification stage given the existence of factual issues as to the terms and scope of the waivers and whether they are enforceable against any potential opt-in plaintiff. *Cf. Cockrell*, 2021 WL 1850702, at *4 (citing *Morris v. Nationwide Child. Hosp.*, No. 2:20-cv-3194, 2021 WL 320740, at *4 (S.D. Ohio Feb. 1, 2021) (holding in the context of a waiver signed as part of a Department of Labor (DOL) settlement that "[c]ourts applying the lower 'modest' standard for certification generally decline to consider signed DOL waiver forms, and those that do consider them typically grant conditional certification if there are enforceability questions.") (collecting DOL waiver cases)).[7] Factual issues regarding whether any potential opt-in plaintiff signed a severance agreement and "Class Action Waiver" and, if so, the terms and scope of the waiver, should be addressed at a later stage of the litigation. *Cf. Cockrell,* 2021 WL 1850702, at *4.

For these reasons, the Court declines to determine at this stage whether any potential class member is barred from participating in the collective action because he or she executed a class action waiver.

---

[7] *Cockrell* and cases cited therein dealt with DOL waivers allegedly signed by potential opt-in plaintiffs after the DOL had investigated their employers and obtained settlements on the employees' behalf. *Cockrell*, 2021 WL 1850702, at *4 (collecting cases). While DOL waivers are not at issue here, the reasoning as to why factual issues surrounding the enforceability of DOL waivers should not be decided at the first stage of the conditional certification analysis applies equally to the "Class Action Waivers" at issue in this lawsuit.

### D.  Temporal scope of notice

Plaintiffs' proposed class notice[8] does not indicate when the class period should commence, i.e., three years prior to the date of the filing of the lawsuit or three years prior to the date of any decision conditionally certifying the class.[9]  (Doc. 11-7 at PAGEID 102).  The undersigned acknowledged in *Bradford* that there is no consensus among courts in the Sixth Circuit as to when the statute of limitations on FLSA claims begins to run for opt-in plaintiffs. *Bradford,* 2020 WL 3496150, at *6 (citing *Adams v. Wenco Ashland, Inc.*, No. 1:19-cv-1544, 2020 WL 2615514, at *7 (N.D. Ohio May 22, 2020) (collecting cases)).  However, "the weight of authority within the Southern District of Ohio indicates the class period should run from the date of an Order granting conditional certification and not the filing of th[e] lawsuit." *Id.* (citing *Rosenbohm v. Cellco Partn.*, No. 2:17-cv-731, 2018 WL 4405836, at *3 (S.D. Ohio Sept. 17, 2018); *Hamm*, 275 F. Supp. 3d at 878; *Myers*, 201 F. Supp. 3d at 897 n. 5).  Therefore, the notice to putative class members should run from the date of any order adopting the undersigned's recommendation.

---

[8] The proposed class notice is addressed to:

> All current and former individuals in positions, job titles, job codes, job classifications, or job descriptions of "Case Manager" and all other similar nomenclature performing substantially identical functions employed by Greater Cincinnati Behavioral Health Services between [insert date from 3 years] and the present.

(Doc. 11-7 at PAGEID 102).

[9] The statute of limitations for FLSA claim is two years, or in the case of a willful violation, three years. *See Lewis v. Huntington Nat. Bank,* 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) ("Under 29 U.S.C. § 255(a), [a] § 216(b) action may be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation.") (citation and internal quotation marks omitted).

### E.  Contents, form, and means of the notice

#### 1.  Means of notice

Plaintiff proposes that notice be sent to putative opt-in plaintiffs by U.S. mail, email, and text message.  (Docs. 11-2, 11-7, 11-8).  GCBHS argues that plaintiffs' proposed methods of notice are not proper.  (Doc. 19 at PAGEID 136).  GCBHS argues that courts generally approve only a single method of notice unless there is reason to believe that particular method is ineffective.  (*Id*.).  GCBHS also argues that notice by text is not permitted in this district absent some showing that other methods are not sufficient, and plaintiffs have not made that showing. (*Id*.).  Plaintiffs assert in reply that many other courts now authorize the use of email and text messages, in addition to regular mail, as effective means of reaching class members and as warranted given the FLSA's remedial purpose, the goal of transmitting notice to the greatest number of class members possible, and U.S. postal delays and errors.  (Doc. 20 at PAGEID 165-68).

"[T]here is a 'growing trend to allow postal mail and e-mail service upon [all] putative class members. . . .'"  *Cowan*, 2019 WL 4667497, at \*11 (quoting *Abner* 2019 WL 1573201, at \*6; *Hall*, 299 F. Supp. 3d at 898) (collecting cases).  "However, where defendants have objected to the use of text messages, the majority of courts in [the Southern District of Ohio] have declined to allow plaintiffs to notify putative class members via text message unless notice through other methods is ineffective."  *Id*. (citing *Nazih v. Café Instanbul of Columbus, LLC*, No. 2:17-cv-947, 2018 WL 4334613, at \*6 (S.D. Ohio Sept. 11, 2018); *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1044-45 (S.D. Ohio 2018); *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 2389721, at \*8 (S.D. Ohio May 25, 2018)).

Plaintiffs have not shown that notice by U.S. mail and email would be ineffective in this case.  Thus, consistent with the "growing trend" in this district, the Court will permit plaintiffs to

send the Notice and Consent forms via U.S. mail and e-mail to all putative class members upon issuance of any conditional certification order. Plaintiffs may not notify any potential opt-in plaintiff of the lawsuit via text message unless notice by U.S. mail and email have been returned as undeliverable for a particular individual, in which event plaintiffs may not contact a potential opt-in plaintiff via text without first obtaining further permission from the Court. *See Cowan*, 2019 WL 4667497, at *11 (citing *Casarez,* 2018 WL 2389721, at *8) (finding that it was an "appropriate compromise" to allow the plaintiff to send a text message upon a showing that notice by U.S. mail and e-mail was insufficient as to any given potential opt-in plaintiff).

### 2. Request for modified language

GCBHS requests that the proposed notice be modified to provide additional information regarding GCBHS's position on the merits of the litigation and to inform potential opt-in plaintiffs that they may have discovery and other related obligations if they join the action. (Doc. 19 at PAGEID 136). GCBHS has not cited any authority for adding this language and has not proposed any specific language to add. GCBHS's request is therefore denied.

### 3. Expedited discovery

GCBHS argues that plaintiffs' expedited discovery requests should be modified to (1) eliminate the requirement that GCBHS provide the email address and telephone number for all 461 potential opt-in plaintiffs because U.S. mail notice is sufficient; and (2) extend the proposed response time of 14 days for GCBHS to provide information about the potential opt-in class members to at least 30 days. (Doc. 19 at PAGEID 137). Because the Court has found that plaintiffs are entitled to send the notice and consent forms via U.S. mail and email, GCBHS is required to provide only the postal and email addresses for the potential opt-in plaintiffs upon the issuance of any conditional certification order.

Plaintiffs do not object to GCBHS's request for an extension of time to provide information about the potential opt-in plaintiffs. The Court will therefore grant GCBHS's request and allow GCBHS 30 days from the date of any conditional certification order to provide the information.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiffs' Motion for Order for Conditional Certification, Expedited Opt-In Discovery, and Court Supervised Notice to Potential Opt-In Plaintiffs (Doc. 11) be **GRANTED**.

2. Plaintiffs shall file an amended notice consistent with the Court's findings herein within fourteen (14) days of the entry of any Order adopting this Report and Recommendation, subject to any additional findings or conclusions by the District Judge.

Date: 11/1/2021

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AUSTIN KLEINHANS, et al.,                     Case No. 1:21-cv-70
      Plaintiffs,                                      Barrett, J.
                                                      Litkovitz, M.J.

      vs.

GREATER CINCINNATI BEHAVIORAL
HEALTH SERVICES,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).